RIVER DEFENSE COMMITTEE et al.,
Plaintiffs,

v.

Eberhard THIERMAN et al., Defendants.

No. 74 Civ. 159.

United States District Court,
S. D. New York.

July 3, 1974.

Winer, Neuburger & Sive, David Sive, Mark A. Chertok, New York City, for plaintiffs.

Aaron G. Windheim, Nyack, N. Y., for Eberhard Thierman.

Dennison Young, Joseph P. Marro, Asst. U. S. Attys., for the Government.

## MEMORANDUM AND ORDER

STEWART, District Judge:

This conflict presents the classic clash between the interests of an individual landowner and the public interest. Here the landowner, the defendant in this action, purchased a piece of land, with the intent to use his rights to river areas under a State patent to create a fill so that his lot would then be big enough to build a house in conformity with the zoning laws. The plaintiffs, on the other hand, claim to assert their own and the community interest in preserving the Hudson River as an important estuary and spawning area for several kinds of fish. The ultimate resolution of this conflict should not be decided by this court because policy determinations of this kind are left to the expertise of the agency. The jurisdiction of the federal court extends only to reviewing whether the Corps of Engineers complied with Congressional dictates as well as with the Agency's own regulations.

This Court has jurisdiction of the subject matter pursuant to Section 102 of NEPA, 42 U.S.C. § 4332(2)(C); 5 U.S.C. §§ 701–706; 28 U.S.C. § 1331(a) (the amount in controversy exceeds $10,000); and 28 U.S.C. §§ 1337, 1361, 2201 and 2202. We conclude that plaintiffs have demonstrated a high degree of probability of establishing that the contested permit was invalidly granted by the Army Corps of Engineers, and that the public interest in the preservation of the Hudson River as a breeding and spawning area would be irreparably harmed if a preliminary injunction is not granted. As will be discussed herein, the defendants will suffer only inconvenience and any monetary damage will be covered by the security ordered by this Court.

*Facts.*

Plaintiffs are the Defend Our River Committee and individual members who use and enjoy the Hudson River and are

interested in maintaining it as an important spawning and nursery ground for many species of fish.

The defendants are:

Eberhard M. Thierman, who owns property in Grandview-on-Hudson, New York and desires to construct a bulkhead and place landfill (fill) shoreward for the purpose of building a family dwelling; the Corps of Engineers, the District Engineer, Colonel Harry W. Lombard, responsible for issuing the permit for the contested construction; the Secretary of the Army Howard H. Callaway and Lt. General C. Gribble, Jr., Chief Engineer of the Corps of Engineers.

The original complaint in this action was filed on January 10, 1974 and an amended complaint followed on February 4, 1974. For the purposes of the determination of plaintiffs' motion for a preliminary injunction, we need only consider the claim that the permit granted to Mr. Thierman is null and void in that (1) the District Engineer's determination not to issue an environmental impact statement was based on conclusory evaluations which failed to develop a reviewable environmental record; (2) the Corps of Engineers failed to draft and file an environmental impact statement pursuant to Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C); and (3) the Corps of Engineers failed to hold a public hearing prior to issuing the permit as required by Section 404 of the Federal Water Pollution Control Act Amendments of 1972 and by the Corps of Engineers Regulation, 33 CFR §§ 209.120(d)(11) and (g).

The present motion was plaintiffs' response to defendant Thierman's depositing rock on his property and into the river on May 21, 1974. He had arranged to receive this rock for fill at no cost to himself. On May 22, 1974 this Court heard oral argument on plaintiffs' application for a Temporary Restraining Order and for an Order to Show Cause bringing on a motion for a preliminary injunction. A restraining order was granted and on May 24, 1974 a preliminary injunction hearing was held.

The basic facts are simple. The river sought to be protected is the Hudson River, a navigable body of water of the United States from the harbor of New York City to a point north of Albany, New York. The location of the planned fill is part of the shallows of the Hudson River, an estuary and an important spawning and nursery ground for many species of fish including striped bass. These shallows are found in limited areas along the shores and provide shelter and food for young fish. The ability of the Hudson to continue to sustain a major fishery is dependent on the continued existence of adequate amounts of healthy shallow areas within the estuary. The uncontested affidavits of John Russell Clark and Robert H. Boyle, men highly qualified in the field of marine life as well as familiar with the Hudson estuary, make it clear that there is at least a probability that the Thierman fill will have a detrimental impact on the Hudson River nursery and spawning area. It is also clear on the basis of the affidavits that continued granting of permits similar to Mr. Thierman's by the Corps of Engineers without a thorough evaluation of their effect will cause serious and irreparable injury to the Hudson River estuary.

The basis for plaintiffs' attempt to enjoin Mr. Thierman from proceeding with his planned construction is their claim that the action taken by the Corps of Engineers was not in conformity with the statutes and regulations under which it acts. The regulations (33 CFR § 209 et seq.) promulgated to establish procedures for the issuance of permits for the placing of fill and structures in water pursuant to Section 10 of the Rivers And Harbors Act of 1899, 33 U.S.C. Section 403 provide, inter alia, that before a permit is issued the Corps of Engineers will evaluate "all relevant factors, including the effect of the proposed work on navigation, fish and wildlife, conservation, pollution, aesthetics, ecolo-

gy and the general public interest . . . ." (33 C.F.R. 209.110(d)(1)). The regulations also provide that the District Engineers "shall coordinate with the regional directors of the Secretary of the Interior on fish and wildlife, recreation and pollution problems associated with . . . filling . . . operations conducted under permits issued under the 1899 Act in the navigable waters of the United States." 33 C.F.R. 209.210(d)(11) specifically provides that the district engineer "will hold public hearings on permit applications whenever response to a public notice indicates that hearings are desirable to afford all interested parties full opportunity to be heard on objections raised." 33 C.F.R. 209.210(g) provides that in order "to conduct civil works program in an atmosphere of public understanding, trust, and mutual cooperation, and in a manner responsive to public needs and desires . . . public hearings are helpful and will be held whenever there appears to be sufficient public interest to justify such action. In case of doubt, a public hearing should be held." Section 404 of the Federal Water Pollution Control Act Amendments also requires that there be an opportunity for public hearings.[1]

Mr. Thierman entered into this statutory and regulatory scheme after having received a permit from the State of New York which withstood judicial review by the New York State courts. On May 4, 1971, Mr. Thierman applied to the Corps of Engineers pursuant to 33 U.S.C. Section 403 for a permit to construct a concrete seawall and fill in the enclosed area behind it. The defendant Colonel Lombard issued public notice No. 6953 dated January 7, 1972 requesting interested parties to comment on Thierman's application.[2] The response to this notice consisted of 33 letters of opposition, a petition in opposition bearing 166 signatures and 138 postcards protesting the planned construction. Eleven individuals wrote in support of the project. Besides eliciting public reaction, the planned project also evoked a response on February 19, 1972 from the Department of Interior which stated that Mr. Thierman's application:

"constitutes a violation of the Refuse Act in that it creates an unreasonable occupancy in navigable waters. We also believe such a project should not be permitted since it creates 'cheap land' for construction purposes utilizing a publicly owned resource. Sufficient upland is available for project implementation space. We can presume that no concern is being given to the further decimation of shoreline habitat. Continued 'piecemeal' development of these valuable areas must be closely monitored if any are to remain.

We recommend that this application be denied since the proposed construction is not within the best interests of the general public."

This position was subsequently withdrawn by the Department of Interior. The Corps of Engineers did not hold a public hearing on the Thierman project.

---

1. Congress enacted Section 404 as part of the 1972 amendments to the Water Pollution Control Act (33 U.S.C. § 1251 et seq.) to prohibit all discharges of pollutants except as specifically exempted. The term pollutant is defined in Section 502(6) as including "rock, sand [and] cellar dirt." (33 U.S.C. § 1362(6)). Section 404 allows exceptions to this general prohibition by authorizing the Chief of Engineers to issue permits for discharge of fill material at designated disposal sites. Such permits, however, may only be granted "after notice and opportunity for public hearings . . . ." § 404(a).

2. The project was described as follows:
"The applicant proposes to construct approximately 292 linear feet of concrete bulkhead having a top elevation of 3' 8" above the plane of mean high water and extending a maximum of 142 feet offshore of the existing line of mean high water. The proposed "L" shape bulkhead will meet an existing wall on its southern end and its northern leg will return to a point approximately 5 feet above the line of mean high water. The applicant also proposes the placement of approximately 6,000 cubic yards of fill behind the proposed bulkhead. . . ."

On October 16, 1973 the Corps determined "that the issuance of a permit for the proposed work will not constitute a major federal action significantly affecting the quality of the human environment and therefore an environmental impact statement is not required."[3] On October 29, 1973 Mr. Thierman received a permit for his proposed construction and fill. At the preliminary injunction hearing, Mr. Thierman testified that he had access to free rock for fill if he received it immediately. Because the rock would otherwise cost him $20,000, Mr. Thierman plans to continue to deposit rock on the banks of the Hudson and into the Hudson River if not restrained.

*Conclusions of Law.*

█ Whether a public hearing was required to be held before granting a permit is the first issue raised by plaintiff in attacking the validity of the permit. Upon the facts before us we conclude that pursuant to 33 C.F.R. 209.-210(d)(11) and 209.210(g) the District Engineer should have held a public hearing. His failure to have done so prior to the issuance of the permit would require us to invalidate the permit. However, we note that the government has now scheduled a public hearing on the proposed fill.

█ Plaintiffs have demonstrated a high degree of likelihood of success on the merits as to their claim that the District Engineer's conclusion concerning Mr. Thierman's application was perfunctory and was not sufficient to support the Corps' determination. The Second Circuit in Hanly v. Kleindienst, 471 F.2d 823 (2nd Cir. 1972) made it clear that federal agencies must establish reviewable environmental records. In addition to instructing agencies that perfunctory conclusions were not acceptable as a basis for environmental determinations, the court also ruled it was error for the agency to consider the project as an isolated phenomenon. In light of the *Hanly* case it is not at all unlikely that the plaintiffs can successfully demonstrate that the Corps' environmental evaluation lacked the necessary basis to support its conclusion.

There is no question on the record before us that there exists a significant environmental controversy over the proposed plan which if allowed to proceed would render this litigation moot. Thus the plaintiffs have not only shown that there is a substantial likelihood of success as to the merits of their claims, they have also demonstrated that irreparable harm would result if a preliminary injunction did not issue. Since defendant obtained the free rock and dumped it on his land, we conclude that the preliminary injunction has not and will not cause him any harm other than delay. We also consider the bond, $7,500. put up by plaintiffs, sufficient to cover any harm which may result in case the defendant is victorious either at the Agency level or in the final outcome of this litigation.

It is therefore

Ordered that defendant Eberhard Thierman, his agents, servants, employees and attorneys and all persons in active concert with him be and hereby are enjoined during the pendency of this litigation from depositing or placing fill, or other material, or from building any structure in the Hudson River at Grandview-on-Hudson, New York; and it is further

Ordered that defendant Eberhard Thierman, his agents, servants, employees and attorneys and all persons in active concert with him be and hereby are enjoined during the pendency of this litigation from placing fill or other material on the banks of the Hudson River at Grandview-on-Hudson, New York; and it is further

Ordered that the bond of $7,500 be continued.

So ordered.

3. Memorandum of October 16, 1973 from the Chief of the Regulatory Branch of the District Engineer's office.